Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50046 | **DATE** | 01/09/2002 |
| **CASE TITLE** | Graf vs. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is hereby granted. Enter attached Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | JAN - 9 2002 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | 01/09/2002 date mailed notice |
| tml | courtroom deputy's initials | |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| CARENA J. GRAF, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 50046 |
| | ) | |
| v. | ) | Philip G. Reinhard |
| | ) | P. Michael Mahoney |
| LARRY G. MASSANARI, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, (Plaintiff), seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner). See 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Disability Insurance Benefits (DIB) pursuant to Title XVI of the Social Security Act (the Act). 42 U.S.C. §1381(a). This matter is before the Magistrate Judge pursuant to consents filed by both parties on May 9, 2001. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

### I. BACKGROUND

Plaintiff initially filed for disability benefits on June 15, 1998, alleging an inability to work since July 15, 1995, due to diabetes, obesity and hypertension. (Tr. 72-74). On August 17, 1998, Plaintiff was notified by the Social Security Administration that she did not qualify for benefits. (Tr. 51-53). Plaintiff submitted a request for reconsideration on September 2, 1998. (Tr. 55). On September 30, 1998, Plaintiff was notified that upon reconsideration, it was determined that Plaintiff was capable of performing the functions of light work and, therefore, was not eligible for benefits.

(Tr. 56-58). Plaintiff then submitted a request for a hearing before an Administrative Law Judge (ALJ) on October 19, 1998. (Tr. 59). Plaintiff appeared, with counsel, before an ALJ for a hearing on her claim for benefits on June 17, 1999. (Tr. 26-48). In a decision issued on January 8, 2000, the ALJ determined that Plaintiff was not entitled to benefits. (Tr. 17-25). On January 21, 2000, Plaintiff submitted a request for review of that hearing decision. (Tr. 12). Plaintiff's request for review was denied by the Appeals Council on December 15, 2000. (Tr. 4-5). That being the final judgment of the Social Security Administration, Plaintiff filed her complaint in this court on February 12, 2001.

## II. FACTS

Plaintiff was born on May 18, 1966, and was 33 years old at the time of the hearing. (Tr. 29). Plaintiff stated that she completed high school and has a CNA license. (Tr. 30). Plaintiff worked as a CNA at St. Joseph's, a nursing home in Freeport, Illinois, until July of 1990 when she had her first child. (Tr. 30-31). Plaintiff testified that she is married and has two sons; at the time of the hearing they were five and eight years old. (Tr. 29). Plaintiff's work at the nursing home involved basic caregiving duties, including assisting patients in and out of wheelchairs. (Tr. 31). Prior to working as a CNA, Plaintiff worked as a private duty aide from 1984 to 1988. (Tr. 31). Plaintiff's most recent job was as a small parts assembler in a factory in the Fall of 1990. (Tr. 32).

With respect to her health, Plaintiff testified that she has type II diabetes and that she is not required to inject insulin. (Tr. 33). Plaintiff stated that she must take a blood sugar reading twice a day and is on medication to control her diabetes. (Tr. 33-34). Plaintiff reported that she had just switched medications so her diabetes was topsy turvy at the time of the hearing. (Tr. 34). Plaintiff also reported that she has some neuropathy in her feet, as a result of the diabetes, that causes numbness, a burning sensation and sharp pains in her feet, particularly when she is on her feet for

a long time. (Tr. 34-35). Plaintiff stated that she is currently taking Ultram to relieve the pain in her feet. (Tr. 35). Plaintiff testified that the numbness in her feet made driving difficult as she was sometimes unable to feel the pedals under her feet. (Tr. 36-37). As to her weight, Plaintiff stated that obesity is a chronic problem that runs in her family. (Tr. 37). Plaintiff reported that she had looked into a weight loss program through a hospital six years ago when she was diagnosed with diabetes, but that she was unable to afford the food. (Tr. 38-39). Plaintiff testified that she has problems with her knees also and that she has degenerative arthritis in her left knee. (Tr. 39). The arthritis results in pain when Plaintiff stands for too long or is active. (Tr. 40). Plaintiff also stated that she experiences swelling in her legs and that she takes sometimes Lasix to keep the swelling down. (Tr. 40). Plaintiff testified that often by eight o'clock in the evening she can hardly walk or move because her legs and feet hurt so much. (Tr. 40). Currently, Plaintiff is taking a blood pressure pill that contains a diuretic so she is not taking the Lasix also. (Tr. 41). Plaintiff was recently referred to a gastroenterologist for blood work and a CAT scan in relation to some abnormal liver enzyme levels. (Tr. 43). Plaintiff testified that she can walk for only fifteen to twenty minutes at a time before she has to sit down and that if she sits for too long she experiences numbness in her legs and feet. (Tr. 42). As to household chores, Plaintiff stated that she does laundry, cleans the dishes, does some cooking and cleans with the help of her son and that she must go down the stairs to the basement to do the laundry. (Tr. 45-46). Plaintiff reported that her husband and son help her carry the laundry up and down the stairs. (Tr. 45). Plaintiff testified that she did sometimes cook for the family but that she has to sit down and take breaks while cooking. (Tr. 45). Plaintiff does the grocery shopping with her family and sometimes she waits in the car while they do the actual shopping. (Tr. 46). Plaintiff testified that she broke her right ankle when she was in the eighth grade

3

and that she has had pain and swelling in it since then. (Tr. 46).

## III.     **MEDICAL HISTORY**

Plaintiff's treatment notes from March 27, 1996, through September 8, 1998, indicate that she was treated by Dr. Michael Merry at the Freeport Clinic. (Tr. 105-131). On March 27, 1996, Plaintiff and her son, William, sought treatment for a cough, cold and sore throat. (Tr. 130). Plaintiff was given a prescription for antibiotics for purulent rhinitis and sinusitis. (Tr. 130). Plaintiff saw Dr. Merry again on May 10, 1996, for a cold that she had had for twenty days and ear pain and was given a prescription for antibiotics. (Tr. 129). Notes from that visit indicate that Plaintiff's blood pressure was elevated, 210/120, and her weight was listed as 431 pounds. (Tr. 129). Plaintiff was instructed to return for a blood pressure check and did so on May 13, 1996. (Tr. 129). Plaintiff's blood pressure, at that time, was reported to be 150/110. (Tr. 129). Plaintiff was seen by Dr. Merry on May 17 and May 31, 1996, for ear pain and the notes indicate that she was suffering from poorly controlled hypertension and her blood pressure was reported to be 170/104. (Tr. 128). On June 28, 1996, Plaintiff was seen for a blood pressure check-up. (Tr. 127). Dr. Merry noted that Plaintiff's blood pressure was controlled but that she was experiencing swelling in her legs. (Tr. 127). Dr. Merry switched Plaintiff to a blood pressure medication with a diuretic effect. (Tr. 127). Plaintiff again saw Dr. Merry regarding her hypertension on August 23, 1996. (Tr. 127). Dr. Merry noted that Plaintiff had no particular concerns and was able to do what she needed to do, her hypertension was reported as stable and Dr. Merry strongly recommended a weight loss program. (Tr. 127-126). On October 4, 1996, Plaintiff saw Dr. Merry for treatment of a sore in her mouth. (Tr. 126). Plaintiff's blood pressure was 150/100, she reported some ear pain and hearing loss and stated that she had no other particular concerns. (Tr. 126). Plaintiff saw Dr. Merry again on October 21 and 22, 1996, for

recurrent otitis. (Tr. 125). Plaintiff's hypertension was noted to be stable and Dr. Merry indicated that Plaintiff was concerned about her inability to lose weight. (Tr. 125). On December 30, 1996, Plaintiff was again seen for a blood pressure check. (Tr. 124). Plaintiff's blood pressure was 142/82, her weight was 435 pounds and she complained of cough and congestion. (Tr. 124). On January 28, 1997, Plaintiff was treated for a cough and chills with a slight fever; her blood pressure was reported to be 159/90. (Tr. 123). Plaintiff saw Dr. Merry again on February 11, 1997, for her congestion and ear discomfort. (Tr. 121-122). On April 29, 1997, Plaintiff saw Dr. Merry for right ear pain and her blood pressure was recorded as 112/90. (Tr. 120-121). Plaintiff saw Dr. Merry on June 2, 1997, complaining of leg swelling. (Tr. 120). Dr. Merry reported that Plaintiff had been to the emergency room on May 31, 1997, and was diagnosed with cellulitis of the leg. (Tr. 120). Dr. Merry wrote Plaintiff a prescription for antibiotics. (Tr. 119). Plaintiff saw Dr. Merry on June 4, 1997, to have her leg rechecked. (Tr. 119). Dr. Merry noted that Plaintiff seemed to be doing better and her legs were less red but seemed to be tender still. (Tr. 119). Dr. Merry saw Plaintiff again to check her legs on June 18, 1997. (Tr. 118). Dr. Merry noted that Plaintiff's cellulitis appeared to be resolved but that her legs were still fairly swollen. (Tr. 118). On July 10, 1997, Plaintiff saw Dr. Merry for complaints of dizziness, left ear congestion, watery eyes and sneezing. (Tr.118). Plaintiff's blood pressure was reported to be 136/78. (Tr. 118). Plaintiff visited Dr. Merry on September 22, 1997, for treatment for neck pain. (Tr. 116). Dr. Merry's notes indicate that Plaintiff had a small pustule under her cheek that may be parotid gland enlargement. (Tr. 116). Plaintiff's blood pressure was reported as 142/90. (Tr. 117). On October 24, 1997, Dr. Merry noted that Plaintiff's blood sugar was high and that Plaintiff would be treated medically. (Tr. 115). Dr. Merry noted on November 19, 1997, that Plaintiff was tired of checking her blood sugars four times a day. (Tr. 114). On November

24, 1997, Plaintiff had an appointment with Dr. Merry for a follow-up of her diabetes. (Tr. 113). Dr. Merry noted that Plaintiff was not complying with her diet and her hypertension was stable. (Tr. 113). On January 26, 1998, Plaintiff reported to Dr. Merry that she had run out of medication and did not have the funds to get a prescription filled. (Tr. 112). Dr. Merry reported that Plaintiff was given samples. (Tr. 112). On February 17, 1997, Plaintiff's blood pressure was noted to be 128/86 and she reported that her blood sugar levels had been in the range of 110 through 150. (Tr. 112). Plaintiff was seen by Dr. Merry on March 10, 1997, with ear pain and congestion. (Tr. 111). Dr. Merry indicated that Plaintiff had mucopruulent rhinitis and sinusitis. (Tr. 111). The next treatment notes are from March 13, 1998, which indicate that Plaintiff was treated for strep throat. (Tr. 110). On May 13, 1998, Plaintiff saw Dr. Merry after visiting the emergency room the previous evening. (Tr. 109). Plaintiff indicated that she had chest pain that radiated to her back. (Tr. 109). Dr. Merry indicated that Plaintiff was vague about her symptoms but that the pain was likely positional and related to her obesity. (Tr. 109). Plaintiff's blood pressure was 140/86. (Tr. 109). A chest x-ray from May 11, 1998, notes a possible mass lesion in the right mid-lung field. (Tr. 136). An ECG report from May 11, 1998, indicated sinus tachycardia and left ventricular hypertrophy. (Tr. 137). Chest x-rays taken at the emergency room on May 12, 1998, indicate the existence of some calcified granulomas in pre-tracheal area of the mediastinum. (Tr. 133). No other abnormalities were noted. (Tr. 133). Plaintiff was seen again for chest discomfort on June 9, 1998. (Tr. 108). Plaintiff's blood pressure was 140/84, but she had no real associated symptoms and Dr. Merry concluded that there was some chest wall abnormality. (Tr. 108). Dr. Merry also noted that Plaintiff complained of increasing pain in her left knee, possibly related to osteoarthritis and obesity. (Tr. 108). X-rays taken on June 9, 1998, of Plaintiff's left knee indicate marked underlying degenerative change,

patellofemoral disease and a small joint effusion. (Tr. 131). On July 8, 1998, Plaintiff was seen for treatment for swelling in her legs. (Tr. 107). Dr. Merry reported that he gave Plaintiff some samples of Lisinopril to see if that would help decrease the swelling. (Tr. 107). On July 24, 1998, Plaintiff was again seen by Dr. Merry, for treatment for a cold. (Tr. 107).

The most recent treatment notes, submitted by Plaintiff during the hearing, indicate that Dr. Merry treated Plaintiff for an insect bite, occasional edema, cough, congestion and ear infections from September 1, 1998, through May 5, 1999. (Tr. 159-167). During that time, her blood pressure appeared stable at about 140/90. (Tr. 159-167).

On August 11, 1998, Dr. Sam Gaines, a consulting physician, completed a Residual Functional Capacity (RFC) Assessment form for Plaintiff. (Tr. 146-154). Dr. Gaines determined that Plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently, standing or walking for six hours in an eight hour day and sitting for six hours in an eight hour day. (Tr. 147). Dr. Gaines found that Plaintiff was not limited with regard to pushing or pulling, he found no postural limitations, manipulative limitations, visual limitations, communicative or environmental limitations. (Tr. 147-151). Dr. Gaines noted that the medical evidence he reviewed indicated that Plaintiff has a history of diabetes, hypertension and obesity and that her hypertension and diabetes are being controlled with medication. (Tr. 154). Dr. Gaines reported that Plaintiff has no end organ damage, has a full range of motion in all her joints and can move about and walk in a satisfactory manner. (Tr. 154). Finally, Dr. Gaines indicated that Plaintiff was limited to the full range of light work activity at her last insured date, March 31, 1997, and that there are no treating source conclusions that differ significantly from his findings. (Tr. 154).

## IV. STANDARD OF REVIEW

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may

8

only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F.Supp. 1377, 1384 (N.D.Ill. 1995).

## V. **FRAMEWORK FOR DECISION**

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied her application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[1] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment

---

[1] The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

9

meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[2] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process

---

[2]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1465; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 ( 7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly

11

relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala,* 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

## VI. ANALYSIS

The court will proceed through the five step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision issued on January 8, 2000. (Tr. 14-25).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and forty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from severe impairments. Specifically, the ALJ found Plaintiff suffers from obesity, mild hypertension, non-insulin dependent diabetes mellitus and degenerative arthritis of the knees. (Tr. 24).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from severe impairments. This finding is not challenged by either party and the court finds no reason to

disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

C.   Step Three: Does claimant's impairment meet or medically equivalent to an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 24). The ALJ found that Plaintiff's allegations of disabling symptoms and limitations are not fully credible. (Tr. 24). Specifically, the ALJ noted that Plaintiff's treatment history is inconsistent with her claims of disabling limitations. (Tr. 21). The medical records provided indicate that Plaintiff's treatment has been conservative in nature and her conditions are being managed medically. None of the treatment records provided by Plaintiff indicate findings that Plaintiff's impairments reach listing level severity. Plaintiff's medical records indicate that her hypertension is stable, she is not on insulin for her diabetes and has no end organ damage as a result of that disease and has not, apparently, received any treatment for her osteoarthritis. The ALJ also noted that Plaintiff's demeanor while testifying at her hearing was generally unpersuasive and despite her allegations of disabling limitations, she displayed no evidence of discomfort. (Tr. 21).

Plaintiff asserts that the ALJ erred at this step of the analysis by failing to discuss the effect of Plaintiff's obesity on the severity of her impairments with respect to the standards set by the Listing of Impairments. The ALJ did discuss Plaintiff's diabetes and osteoarthritis and found that those impairments did not reach the level of severity required by the regulations. (Tr. 18). The ALJ also noted that even the combination of Plaintiff's impairments did not equal the level of severity contemplated by the Listings. (Tr. 18). While the ALJ did not specifically mention Plaintiff's obesity in that portion of his decision, the ALJ did address the effects of Plaintiff's obesity in later parts of

his decision and found that there was no medical evidence of end organ damage in relation to that condition. (Tr. 20). Finally, this court notes that the medical evidence in this case is relatively sparse. The majority of the treatment notes submitted by Plaintiff addressed her chronic ear infections and cold symptoms. No objective evidence was submitted with respect to the severity of her obesity and its effects on her ability to function. Therefore, substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. The ALJ's determination as to Step Three of the Analysis is affirmed.

D.     Step Four: Is the claimant capable of performing work which the claimant performed in the past?

In performing the analysis for Step Four, the ALJ determined that Plaintiff is able to perform her past relevant work. (Tr. 24).

Plaintiff asserts that the ALJ erred in finding that she could perform her past relevant work. With regard to Plaintiff's RFC, the ALJ determined that Plaintiff had the capacity to perform the functions of work except for lifting more than twenty pounds occasionally and ten pounds frequently. The ALJ found that, while Plaintiff claimed greater limitations, particularly with respect to her ability to stand or walk for any length of time, the medical evidence did not support those limitations. The ALJ noted that while an x-ray did show marked degenerative changes in her left knee, Plaintiff submitted no evidence of any loss of range of motion. (Tr. 19). As to the edema in her legs, Plaintiff's treatment notes indicate that while the swelling is significant, those notes also indicate that it is an occasional occurrence. (Tr. 19). Finally, as stated above, the ALJ determined that Plaintiff was not fully credible with regard to her claimed limitations. The ALJ's credibility determinations are entitled to great deference and will not be overturned unless they are shown to be patently wrong.

*Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) and *Powers v. Apfel* 207 F.3d 431, 435 (7th Cir. 2000). Plaintiff has failed to demonstrate that the ALJ's credibility determination is patently wrong. The only RFC assessment included in the record supports the ALJ's findings as to Plaintiff's limitations. Further, there are no medical records that contradict the ALJ's findings as to Plaintiff's RFC.

The ALJ determined that Plaintiff's past relevant work included three months as a factory assembly worker. The ALJ found that Plaintiff's work was light exertional level work and consistent with the RFC he had found. The ALJ noted that Plaintiff's past relevant work, as she testified to it, included no heavy lifting and was work that involved small parts assembly. (Tr. 23). This work is consistent with the limitations found by the ALJ in determining Plaintiff's RFC and the ALJ therefore, correctly determined that Plaintiff was capable of performing her past relevant work. Plaintiff claims that the ALJ erred in failing to consider her standing, sitting and walking limitations in deciding if she retained the RFC to do her past relevant work. As stated above, the ALJ properly determined that Plaintiff did not have any sitting, standing or walking limitations. Therefore, it was not an error for the ALJ to determine that Plaintiff could perform her past relevant work.

The ALJ's decision at Step Four is supported by substantial evidence. Therefore, the ALJ's decision at this step is affirmed.

E.  Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

At Step Five The ALJ determined that Plaintiff's Residual Functional Capacity did allow her to perform the full range of light work and, therefore, a significant number of jobs existed in the national economy that she can perform. While the ALJ did determine that Plaintiff was ineligible

15

for benefits at Step Four of the analysis, he found, in the alternative, that Plaintiff was capable of performing a significant number of jobs existing in the national economy and therefore was not disabled at Step Five of the Analysis. (Tr. 23). The ALJ noted that Plaintiff is classified as a younger individual, has at least a high school education, has no transferable skills and can perform the full range of light work. (Tr. 23). Therefore, the ALJ found that based upon Medical-Vocational Rule 202.21, Plaintiff is not disabled because that rule directs such a finding based upon the significant number of jobs existing in the national economy that Plaintiff is capable of performing. (Tr. 23). This court has reviewed the ALJ's findings and the Medical-Vocational Guidelines contained in Appendix 2 and finds that the ALJ's determination is supported by substantial evidence. Plaintiff asserts that the ALJ erred in finding that Plaintiff had previously performed skilled work but that those skills are non-transferable. (Plaintiff's Replay at 3, filed 7/10/2001). This court has reviewed the Medical-Vocational Guidelines and determined that even if Plaintiff is correct in her assertion that the ALJ erred, the guidelines would direct a finding of not disabled even if Plaintiff's previous work was categorized as unskilled. *See*, Rule 202.20 of Appendix 2. Finally, Plaintiff asserts that the ALJ erred in finding that Plaintiff was capable of performing the full range of light work. Plaintiff claims that the ALJ failed to take her walking and standing limitations into consideration when finding that she was capable of performing light work. As stated above, the ALJ's findings with respect to Plaintiff's limitations are supported by substantial evidence. However, even if the ALJ did err in finding that Plaintiff was capable of performing the full range of light work, that error is harmless. If Plaintiff is found to be limited in her ability to walk and stand, then she is still capable of performing the full range of sedentary work pursuant to the regulations. *See*, 20 C.F.R. §404.1567. According to the Medical Vocational Guideline in Appendix 2, an individual of younger

age, who is at least a high school graduate, who has performed only unskilled work and can perform the full range of sedentary work is not disabled. *See,* Rule 201.27 of Appendix 2. Therefore, even if Plaintiff is correct in asserting that the ALJ erred both in determining Plaintiff's maximum sustained work capability and the skill level of her previous work experience, the Medical-Vocational Guidelines in Appendix 2 still direct a finding of not-disabled.

## VII. <u>CONCLUSION</u>

For the above listed reasons, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is hereby granted.

**ENTER:**

_____
**P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**

**DATE:** 1/9/02

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

**DOCKETED**

**JAN - 9 2002**

CARENA J. GRAF

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 01 C 50046

KENNETH S. APFEL

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Judgment is entered in favor of the defendant and against the plaintiff.

Michael W. Dobbins, Clerk of Court

Date: 1/9/2002

Gale L. Graeff, Deputy Clerk